UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DAQUION M. POTTER, Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant.

Case No. CV 08-1684 JC

MEMORANDUM OPINION

## I. SUMMARY

On March 14, 2008, plaintiff Daquion M. "Scotty" Potter ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 19, 2008 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") regarding plaintiff's credibility and the medical evidence are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 16, 2008, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 74-76). Plaintiff asserted that he became disabled on September 1, 1985, due to his HIV-positive status, Hepatitis C and asthma. (AR 28).

On May 2, 2006, the ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), plaintiff's legal guardian, and a vocational expert. (AR 380-408).

On May 26, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 28-34). Specifically, the ALJ found: (1) plaintiff's HIV positive status was a severe impairment (AR 33); (2) plaintiff's impairment did not meet or medically equal one of the listed impairments (AR 33); (3) plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 4 hours in an 8 hour workday and sit 6 hours in an 8 hour workday (AR 33); (4) plaintiff had no past relevant work (AR 33); (5) plaintiff could perform a full range of sedentary work, thus Medical-Vocational Rule 201.27 directed a finding of "not disabled" (AR 33); and

///

///

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

(6) plaintiff's allegations regarding his limitations were not fully credible. (AR 32).

The Appeals Council denied plaintiff's application for review. (AR 4-6).

**III. APPLICABLE LEGAL STANDARDS**

**A. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

///

///

(4) Does the claimant possess the residual functional capacity to perform his past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

[2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. PERTINENT FACTS

### A. Plaintiff's Statements and Testimony

An HIV questionnaire dated May 24, 2004, reflects the following: Plaintiff (i) was first diagnosed with HIV when he was 8 months old (DOB 8/14/85) (AR 141); (ii) experienced diarrhea once a week when he took certain HIV medications (AR 141, 143); (iii) did not experience weight loss, incontinence, night sweats or fevers (AR 141-42); (iv) had no trouble with sleeping, grooming, or household chores (AR 142); (v) could walk two to three miles without resting (AR 142); (vi) went out of his home "every weekend" (AR 142); (vii) had no mental problems (AR 143); (viii) experienced asthma after "running a lot" (AR 143); and (ix) had not lost his job due to his impairment, but was "tired more" when working (AR 143).

A disability report dated October 20, 2004, reflects that plaintiff was receiving medical care for HIV infection which included several medications that caused nausea and fatigue. (AR 105, 107, 108).

An HIV questionnaire dated January 4, 2005, reflects the same information as plaintiff's May 24, 2004 questionnaire, except plaintiff also stated that he experienced (i) fatigue due to work and school activities that required him to take two naps per day, for one to two hours a piece; and (ii) "marked side effects" from his medication including nausea, vomiting, abdominal pain, and weight loss. (AR 148-151).

On May 2, 2006, at the administrative hearing, plaintiff testified regarding his symptoms and limitations. (AR 383-98). He stated, *inter alia*, that he: (i) was

attending Los Angeles Harbor College, had earned twenty-seven credits with a GPA of 1.8, had registered for three classes, but dropped two, and expected to drop the third because of his condition (AR 383, 389-90); (ii) was also working at Blockbuster Video as a cashier, but his doctor limited him to a maximum of seventeen hours per week (AR 384, 397-98); (iii) had previously worked more hours at Blockbuster Video, depending on the store's scheduling, or his own school conflicts or health limitations (AR 385-86); (iv) experienced side effects from his medication included back pain, nausea, fatigue/tiredness, and infrequently, headaches (AR 386); (v) experienced nausea two to three times a week for four to five hours at a time, and suffered diminished concentration as a result (AR 386-87); (vi) took four to five hour naps daily due to the fatigue (AR 387); (vii) experienced headaches "once or twice" a week that lasted "about half the day" (AR 389); (viii) worked varying shifts, but felt "run down [and] tired" when he worked over seven hours, or had work and school in the same day (AR 388); (ix) was positive for hepatitis C but could not be treated simultaneously for his HIV and Hepatitis C (AR 390-91); (x) had a stable liver condition, a normal T-cell count for a person with HIV, and an undetectable viral load (AR 391-92); (xi) missed work once or twice a month (AR 392-93); (xii) experienced "more severe" problems, particularly due to fatigue from "school and work" and "back problems" due to medication (AR 394); and (xiii) was sometimes administered his medication at the hospital (AR 394-95).

**B. Statements of Dr. Carol D. Berkowitz**

Dr. Carol D. Berkowitz of Harbor-UCLA Medical Center treated plaintiff since 1986. (AR 373). Treatment notes from Harbor-UCLA Medical Center between August 23, 2004 to March 20, 2006 reveal, *inter alia*, that plaintiff suffered primarily from HIV and Hepatitis C infections, and was treated mostly with a combination of several HIV medications. (AR 154-74, 184-352). Plaintiff reported side effects from the medication (e.g., nausea, diarrhea, and fatigue)

which were resolved with varying degrees of success. (See, e.g., AR 154, 184). His weight remained stable overall. (AR 184-202). Plaintiff was generally doing well; he had no acute complaints and suffered from no significant health problems apart from the HIV and Hepatitis C. (AR 184-202).

In an undated fatigue restriction questionnaire, Dr. Berkowitz stated that plaintiff was slightly limited in his attention span and ability to be punctual, was moderately limited in his ability to complete a normal work day without interruptions from fatigue-based symptoms, but had no other limitations. (AR 373-75). The prognosis at that time was "guarded." (AR 374).

In a May 25, 2004 HIV questionnaire physician statement, Dr. Berkowitz opined that plaintiff (i) was "fully functional" with "no current limitations"; (ii) did not appear chronically ill or visibly fatigued; (iii) was not limited in lifting and carrying; and (iv) could stand and/or walk eight hours, and sit for an unlimited period during a 40 hour workweek with normal breaks. (AR 145-46).

In a January 4, 2005 HIV questionnaire physician statement, Dr. Berkowitz opined that plaintiff (i) did not appear chronically ill or visibly fatigued; (ii) was "[a]ble to do [a] full range of activities" with limitation on duration due to his medications; (iii) could stand and/or walk two to four hours, and sit for an unlimited period during a 40 hour workweek with normal breaks; and (v) experienced side effects from protease inhibitors including weakness, dizziness and vomiting. (AR 152-53).

On June 9, 2005, in a handwritten letter directed "To Whom it May Concern," Dr. Berkowitz requested that plaintiff's "work schedule be curtailed at the present time" due to "recent exacerbations in [plaintiff's] medical condition including adverse reactions to his medications," and the need for "frequent medical visits and monitoring . . . ." (AR 111).

On May 5, 2006, Dr. Berkowitz wrote a letter to the Los Angeles Harbor College Admissions office, urging the school to reinstate plaintiff as a student, and

explaining plaintiff's challenges due to his medical condition. (AR 127).

In a May 5, 2006 physical residual functional capacity questionnaire, Dr. Berkowitz opined that plaintiff (i) experienced "multiple" side effects from "multiple HIV drugs" including fatigue, anemia and "elevated liver enzymes" (AR 353, 356, 357-72); (ii) was presently "pain free" (AR 353); (iii) was "very stressed" due to his "health concerns (fatigue), work and school" (AR 354); (iv) experienced diminished attention and concentration "frequently" due to his symptoms (AR 354); (v) was capable of only "low stress" work, because he would become "fatigued with either physical or emotional stress" (AR 354); (vi) could not sit or stand for more than one hour without adjusting his position (AR 354-55); (vii) could not sit, stand or walk more than two hours in an eight-hour workday with normal breaks (AR 355); (viii) did not require additional, unscheduled breaks during an eight-hour work day (AR 355); (ix) could lift and/or carry 20 pounds occasionally, 10 pounds frequently, but never 50 pounds (AR 355); (x) could twist, stoop and bend frequently and climb ladders or stairs occasionally, but had no limitations on repetitive reaching, handling or fingering (AR 355-56); (xi) would expect to be absent from work about four days per month as a result of his impairments (AR 356).

In a letter submitted to the Appeal's Council and dated August 1, 2006, Dr. Berkowitz stated: (i) plaintiff's condition required "monthly hospital visits to see the doctors and to monitor his viral load and immune competency;" (ii) plaintiff "often ha[d] experienced adverse reactions to his multiple medications (e.g., nausea, vomiting, and fatigue); and (iii) the medication side effects ma[d]e plaintiff "unable to work in a full-time job." (AR 376).

**C. Statement of Medical Consultant**

On January 13, 2005, a non-examining, consulting physician completed a residual functional capacity assessment which reflects that plaintiff could (i) lift and/or carry 20 pounds occasionally, and 10 pounds frequently; (ii) stand and/or

walk four hours in an eight-hour workday; and (iii) sit six hours in an eight-hour workday. (AR 177). The consulting physician imposed no other limitations on plaintiff's abilities. (AR 175-83).

**D. The ALJ's Decision**

In his May 26, 2006 decision, the ALJ thoroughly summarized the medical opinions and evaluations regarding plaintiff's physical impairments, statements from plaintiff and his legal guardian, and testimony of plaintiff and the vocational expert at the administrative hearing. (AR 28-34). The ALJ determined that plaintiff's HIV-positive status was a severe impairment, but his Hepatitis C and asthma were not. (AR 32, 33). The ALJ also noted that plaintiff's subjective complaints included, *inter alia*, back pain, nausea, inability to concentrate, fatigue and repeated headaches. (AR 29).

The ALJ rejected the opinions expressed in Dr. Berkowitz's May 5, 2006, physical residual functional capacity questionnaire ("May 5 Opinions") for several reasons. (AR 31 (citing AR 353-56)).

First, the ALJ rejected Dr. Berkowitz's May 5 Opinions because they were "not supported by the treatment records." (AR 31). Specifically, the ALJ found:

> Dr. Berkowitz stated in the May 2004 questionnaire that [plaintiff] [was] fully functional with no current limitations. Approximately 8 months later, in the January 2005 questionnaire, Dr. Berkowitz changed the residual functional capacity assessment to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 2-4 hours in an 8-hour workday and sit unrestricted. A little over [a] year later in the May 2006 questionnaire, she claim[ed] [plaintiff] [was] unable to perform sedentary work on a regular and continuous basis. However, the treatment records (Exhibits 6F and 9F [AR 154-74, 184-352]) do not show any significant deterioration in [plaintiff's] condition between the May 2004 and May 2006 questionnaires,

> certainly not the extent that would justify Dr. Berkowitz's assessments in January 2005 and May 2006. The treatment records do show medication side effects; however, those side effects were quickly resolved with adjustment of the medications and did not result in any functional limitations lasting 12 months. [Plaintiff] generally had no acute complaints and reported that he was doing well. There is no evidence of opportunistic infections. [Plaintiff's] weight remained stable overall.

(AR 31).

Second, the ALJ noted that the May 5 Opinions were inconsistent with plaintiff's testimony regarding his activities of daily living leading up to the administrative hearing. Specifically, the ALJ found the following:

> Moreover, Dr. Berkowitz even wrote to the claimant's college on May 5, 2006 and urged the college to reinstate the claimant (Exhibit 4E [AR 127]). Dr. Berkowitz also wrote a letter dated June 9, 2005, requesting that his work schedule be curtailed, and that he [could not] work 17 hours per week (Exhibit 2E [AR 111]). The claimant currently works 17 hours per week based on Dr. Berkowitz's order, but he also attends college. It is reasonable to assume that if the claimant is unable to perform even sedentary work on a regular and continuous basis, as Dr. Berkowitz contends in the May 2006 questionnaire, she would have taken the claimant off school and work. The claimant's ability to work 17 hours a week <u>plus</u> attend college suggests that he has the capacity to work more than the 17 hours per week prescribed by Dr. Berkowitz.

(AR 31-32) (emphasis in original).

Third, the ALJ pointed to the absence of documentation for plaintiff's claims that he called in sick or left work early each month and Dr. Berkowitz's

opinion that plaintiff would miss work about four days a month due to his impairments, especially considering that plaintiff continued to work and had not lost his job due to the alleged absences. (AR 32).

The ALJ accepted the medical consultant's residual functional capacity assessment. (AR 32). He noted that the medical consultant's opinions were essentially consistent with Dr. Berkowitz's January 4, 2005 assessment except that Dr. Berkowitz imposed a standing/walking limitation of two to four hours in an eight-hour workday. (AR 32). The ALJ found "the treatment records . . . more consistent with the upper range of Dr. Berkowitz's standing/walking limitation . . . [of] standing/walking 4 hours total in an 8-hour workday." (AR 32). He expressly pointed to the side effects of plaintiff's medications "that cumulatively could reasonably limit [plaintiff] to light work with standing/walking 4 hours." (AR 32).

The ALJ found plaintiff's allegations regarding the severity of his symptoms and related limitations "not fully credible." (AR 32). First, as noted in connection with his analysis of Dr. Berkowitz's May 5 Opinions, the ALJ found that plaintiff's subjective symptoms and limitations were inconsistent with the level of treatment the medical records showed he had received. (AR 32). Second, the ALJ pointed out that the evidence demonstrated that plaintiff was able to both work part time ("earning near substantial gainful activity income") and attend college "indicat[ing] he [was] not as limited as he claim[ed]." (AR 32).

## V. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

To the extent plaintiff contends that the ALJ improperly rejected Dr. Berkowitz's May 5 Opinions (Plaintiff's Motion at 8 n.3), this Court concludes that the ALJ did not materially err.

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish

among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating

---

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

Although the treating physician's opinion is generally given more weight, a nontreating physician's opinion may support rejecting the conflicting opinion of a claimant's treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). If a nontreating physician's opinion is based on independent clinical findings that differ from the findings of the treating physician, the nontreating physician's opinion may be considered substantial evidence. Id. at 1041 (citing Magallanes, 881 F.2d at 751). If that is the case, then the ALJ has complete authority to resolve the conflict.[4] On the other hand, if the nontreating physician's opinion contradicts the treating physician's opinion but is not based on independent clinical findings, or is based on the clinical findings also considered by the treating physician, the ALJ can only reject the treating physician's opinion by giving specific, legitimate reasons based on substantial evidence in the record. Id. (citing Magallanes, 881 F.2d at 755); see Magallanes, 881 F.2d at 751-52 (Substantial evidence that can support the conflicting opinion of a nonexamining medical advisor can include: laboratory test results, contrary reports from examining physicians, and testimony from the plaintiff that is inconsistent with the treating physician's opinions.).

---

[4]Where there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict. Thomas, 278 F.3d at 956-57.

**2. Analysis**

The ALJ rejected Dr. Berkowitz's May 5 Opinions for clear, convincing, specific and legitimate reasons supported by substantial evidence.

First, an ALJ may properly rejected a medical opinion that conflicts with the physician's own treatment notes. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). Here, the ALJ noted that the relevant treatment records show plaintiff suffered no acute ailments other than HIV and Hepatitis C, that plaintiff's weight remained stable, and he consistently reported he was doing well. (AR 31). The ALJ also noted that plaintiff did not experience weight loss, incontinence, night sweats, or fevers, and had no trouble with sleeping. (AR 30). In addition, the records show that any negative medication side effects were generally resolved with adjustments to plaintiff's medications. Plaintiff also failed to demonstrate that the side effects resulted in any functional limitations lasting 12 months or longer. The ALJ also supported his finding based on the conflicting opinion of the medical consultant, to the extent it corroborated Dr. Berkowitz's earlier findings. Magallanes, 881 F.2d at 752 (ALJ may rely, in part, on nonexamining physician's testimony to reject the opinions of treating physicians).

Second, an ALJ may properly reject a medical opinion if it is inconsistent with a plaintiff's demonstrated abilities. Magallanes, 881 F.2d at 751-52. Here, the ALJ explained that Dr. Berkowitz's opinions regarding plaintiff's functional limitations was inconsistent with plaintiff's demonstrated abilities to work and attend school at the same time. (AR 31-32). The ALJ reasonably concluded that a person who was unable to perform even sedentary work would not have been able

to sustain the schedule maintained by plaintiff. (AR 31-32). The ALJ's finding that Dr. Berkowitz's opinions were inconsistent with plaintiff's demonstrated abilities was supported by substantial evidence.

Finally, an ALJ may properly reject a treating physician's opinion that is unsupported by the record as a whole. Batson, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings). As the ALJ correctly noted, there is no evidence in the record documenting that plaintiff has been consistently absent from work, or that plaintiff's impairment would particularly cause such absences. As the ALJ also noted, plaintiff continued to attend school and work up until the hearing, and had not been terminated from his job due to his condition. (AR 32).

**B. The ALJ Properly Evaluated Plaintiff's Credibility**

**1. Pertinent Law**

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse

credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (e.g., daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

**2. Analysis**

The ALJ presented clear and convincing reasons for discounting plaintiff's testimony, and thus did not err in his assessment of plaintiff's credibility.

First, in assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of his symptoms. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.1991) (en banc); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon nonprescription pain medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony"). Here, the ALJ reasonably inferred that if plaintiff's fatigue had

been more severe, plaintiff would have been prescribed, or at a minimum sought out, more restrictive limits on his work and school schedule. Cf. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected plaintiff's claim of severe pain as inconsistent with the "minimal, conservative treatment" she received); Chavez v. Department of Health and Human Services, 103 F.3d 849, 853 (9th Cir. 1996) (failure to seek "further treatment" for back injury among specific findings justifying rejection of claimant's excess pain testimony). It was equally reasonable for the ALJ to discredit plaintiff's allegations of disabling fatigue because plaintiff did not require hospitalization or seek other more extreme treatment measures.[5] Cf. Muniz v. AMEC Construction Management, 2009 WL 866843 at *5 (C.D. Cal. March 30, 2009) (fatigue, although common in HIV-infected adults, ranges in "severity and etiology." "A mere report of [fatigue] therefore does not inform the Court whether the[] symptoms are so disabling as to make him "unable to perform all the essential duties of any occupation for which [he is] or may reasonably become qualified . . . .").

Second, as discussed in connection with plaintiff's treating physician, the ALJ properly discredited plaintiff's allegations of disabling fatigue as inconsistent with the plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).

---

[5]Plaintiff contends that absence of "opportunistic infections,"and lack of hospitalization, or emergency room treatment for HIV-related symptoms are not legitimate reasons for discrediting plaintiff's testimony. (Plaintiff's Motion at 9). Nonetheless, the ALJ's interpretation of the medical evidence and claimant's testimony was reasonable and supported by substantial evidence, thus the Court will not "second-guess" the ALJ's findings. Rollins, 261 F.3d at 857; Andrews, 53 F.3d at 1041.

Third, an ALJ may discredit a plaintiff's subjective symptom testimony due, in part, to the absence of supporting objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, the ALJ reasonably concluded that plaintiff's fatigue was not as profoundly disabling because plaintiff had no severe conditions commonly experienced by people living with HIV (e.g., opportunistic infections, weight loss, incontinence, night sweats, fevers, sleeplessness, other "acute complaints").

To the extent plaintiff suggests that the ALJ failed completely to consider plaintiff's limitations due to medication side effects, that assertion is belied by the record. (Plaintiff's Motion at 9-11). The ALJ stated that "medication side effects" limited plaintiff to standing/walking no more than four hours. (AR 32). The ALJ determined that this limitation "significantly eroded" plaintiff's ability to perform "light" work. (AR 33). As a result, the ALJ found plaintiff able to perform only sedentary work. (AR 33).

As the ALJ made specific findings stating clear and convincing reasons supported by substantial evidence for disbelieving plaintiff, the ALJ's credibility determination was not erroneous.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 27, 2009

/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE